**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALFREDO RODRIGUEZ PEREZ, on behalf of himself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **Jury Trial Demanded** |
| | **Case No. 23-cv-2251** |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

Plaintiff Alfredo Rodriguez Perez, on behalf of himself and all others similarly situated, through counsel, alleges as follows against Defendant Amazon.com, Inc.:

### INTRODUCTION

1.      On January 11, 2021, the City of New York enacted a new law that requires retailers and other commercial establishments that collect, retain, convert, store, or share customers' "biometric identifier information" to notify their customers of these practices before customers enter those establishments. *See* N.Y.C. Admin. Code § 22-1201 *et seq*. ("The Biometric Identifier Information Law"). The type of information the law applies to includes any physiological or biological characteristic that is used to identify (or assist in identifying) a person, such as facial recognition, retina scans, fingerprints, handprints, or any other identifying characteristic like the shape or size of a person's body.

2.      The Biometric Identifier Information Law creates a very simple mandate for commercial establishments that collect customers' biometric identifier information: they must "plac[e] a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the

commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable." N.Y.C. Admin. Code § 22-1202(a).

3.     By adopting this basic mandate, the City of New York has made it clear that consumers have a right to know when commercial establishments are collecting their biometric identifier information, so that consumers can decide for themselves whether they want to shop at such establishments or further investigate those establishments' practices before allowing their biometric identifier information to be collected.

4.     Since 2019, when Amazon first opened several Amazon Go stores in New York City, Amazon has collected, converted, retained, and stored the biometric identifier information of all customers who enter its Amazon Go stores. Unlike traditional grocery or convenience stores where cashiers scan what customers are purchasing and charge them for the goods, an Amazon Go customer typically leaves the store with the goods they want and is automatically charged for such goods without waiting in line, scanning, or interacting with a cashier. To make this "Just Walk Out" technology possible, the Amazon Go stores constantly collect and use customers' biometric identifier information, including by scanning the palms of some customers to identify them and by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's body to identify customers, track where they move in the stores, and determine what they have purchased.

5.     Despite constantly collecting customers' biometric identifier information in Amazon Go stores in New York City, Amazon has not complied with the simple disclosure requirement of the Biometric Identifier Information Law. From January 15, 2022, when the law's implementing rule went into effect, through March 13, 2023, Amazon failed to post *any* signs at

the entrances of any Amazon Go stores in New York City that would notify customers that those stores collect, retain, convert, and store consumers' biometric identifier information.

6.      On February 7, 2023, Plaintiff Alfredo Rodriguez Perez notified Amazon in writing that he had visited the Amazon Go store at 80 Pine Street, that the store was collecting customers' biometric identifier information, that Amazon has an obligation to post a sign notifying customers about collecting such information, and that Amazon was not complying with that obligation.

7.      Amazon did not respond to Mr. Rodriguez Perez's letter at all, let alone provide him with an express written statement within 30 days that the violation had been cured and that no further violations would occur in the future, as the Biometric Identifier Information Law required Amazon to do. Nor did Amazon cure the violation.

8.      Instead, on or around March 14, 2023, several days after the *New York Times* published a story on Amazon's failure to post a sign about its collection of biometric identifier information in its Amazon Go stores in New York City,[1] Amazon first posted a sign outside its Amazon Go stores.

9.      But that sign woefully fails to comply with the disclosure mandate of the Biometric Identifier Information Law. The new sign fails to disclose that Amazon converts and retains biometric identifier information. Even worse, the sign informs customers that Amazon will *not* collect biometric identifier information on them unless they use the Amazon One palm scanner to enter the Amazon Go store, even though Amazon Go stores *do* collect biometric

---

[1] *See* Kashmir Hill, *Which Stores Are Scanning Your Face? No One Knows*, N.Y. Times (Mar. 10, 2023), https://www.nytimes.com/2023/03/10/technology/facial-recognition-stores.html (stating that a reporter visited an Amazon Go store in Manhattan that "was awash in cameras, sensors and palm scanners" but did not have a sign disclosing that the store collects customers' biometric identifier information).

identifier information on *every single customer*, including information on the size and shape of every customer's body. Nor is the sign clear and conspicuous, as the sign's color, style, and font are designed to avoid attracting customers' attention. And at Amazon Go's 30 Rockefeller Plaza location—a store with six customer entrance doors, placed side-by-side—Amazon placed just a single small sign at the furthest end, making it all but impossible that a customer entering from the opposite side (*i.e.*, five doors down) will ever see, much less read, the sign.

10.     By posting these signs, Amazon's compliance with the Biometric Identifier Information Law has gone from bad to worse: instead of leaving customers in the dark about its collection of biometric information, as Amazon did for 14 months, Amazon is now affirmatively offering false assurances that it will not collect any biometric information from most customers.

11.     In this action, Plaintiff Rodriguez Perez seeks a declaration that Amazon has violated the Biometric Identifier Information Law, an order requiring Amazon to comply with the law, and damages for himself and the other Amazon customers whose rights were violated by Amazon, among other forms of relief.

**PARTIES**

12.     Alfredo Alberto Rodriguez Perez is a resident of Kings County, New York, and has resided in New York City since 2015. Mr. Rodriguez Perez has been an Amazon customer for the past decade.

13.     Amazon.com, Inc. is a publicly-traded company headquartered in Seattle, Washington and incorporated in Delaware. Amazon is the world's largest retailer and serves its consumers through both online and physical stores, including in the City of New York.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because this is a class action where the amount in controversy exceeds $5 million, exclusive of interest and costs, and the Plaintiff and most of the Class Members are citizens of the State of New York, while the Defendant is a citizen of Washington State and Delaware.

15.     There is specific personal jurisdiction over Amazon in this District, because each violation at issue in this action occurred in this District, where Amazon currently operates nine Amazon Go stores that failed to comply with the City of New York's Biometric Identifier Information Law.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## FACTUAL BACKGROUND

### A.  The City of New York Enacts the Biometric Identifier Information Law

17.     In 2021, New York City enacted Local Law 3 ("the Biometric Identifier Information Law"), which amended the New York City Administrative Code to require businesses to notify customers of the use of biometric identifier technology and prohibit the sale of biometric identifier information. The Biometric Identifier Information Law is codified in Chapter 12 of Title 22 of the New York City Administrative Code. *See* N.Y.C. Admin. Code §§ 22-1201 – 1205.

18.     The Biometric Identifier Information Law requires commercial establishments, including retail stores selling goods to consumers, that collect, retain, convert, store, or share biometric identifier information about consumers, to disclose that they do so by placing a clear and conspicuous sign at each customer entrance. N.Y.C. Admin. Code § 22-1202(a).

19.     The Biometric Identifier Information Law defines the term "biometric identifier information" as "a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint, (iii) a scan of hand or face geometry, or any other identifying characteristic." N.Y.C. Admin. Code § 22-1201. The specific examples of "biometric identifier information" identified in Section 22-1201 are illustrative and not exhaustive.

20.     As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on the Biometric Identifier Information Law, "physiological characteristics concern the shape or composition of the body". In other words, information on the size or shape of a customer's body is an "identifying characteristic" that qualifies as "biological identifier information" under § 22-1201.

21.     The Biometric Identifier Information Law states that establishments can comply with the disclosure requirements of § 22-1202(a) by posting at every entrance the sign prescribed by the Commissioner of Consumer and Worker Protection. N.Y.C. Admin. Code § 22-1202.

22.     In 2021, the Commissioner of Consumer and Worker Protection adopted a rule to implement the Biometric Identifier Information Law. The rule, which is located in Chapter 8 of Title 6 of the Rules of the City of New York, states that:

> To comply with section 22-1202 of Chapter 12 of Title 22 of the New York City Administrative Code, a commercial establishment covered by such section must post a sign in a clear and conspicuous manner at every entrance used by customers in a size of at least 8.5 inches by 11 inches that discloses if customers' biometric identifier information is being collected, retained, converted, stored, or shared. The requirements of this section may be fulfilled by posting a color copy of the Biometric Identifier Information Disclosure, as made publicly available on the Department's website, in a clear and conspicuous manner at every entrance used by customers in a size of at least 8.5 inches by 11 inches.

23.     The following image is the Biometric Identifier Information Disclosure sign that the Department of Consumer and Worker Protection has made publicly available on its website so that commercial establishments like Amazon could post a color copy of this sign and comply with the Biometric Identifier Information Law's sign mandate.

## Attention Customers

## Biometric identifier information collected at this location

**Business Name:**

This Business collects, retains, converts, stores, or shares customers' biometric identifier information, which may include:


facial recognition


eye scans


voiceprints

This is information that can be used to identify or help identify you.

**B. Amazon Go Stores in New York City collect, use, retain, convert, and store consumers' biometric identifying information, including the shape and size of every customer's body and a palm image of many customers.**

24.     In 2018, Amazon launched its first Amazon Go stores to sell food, drinks, and other consumer goods in American cities. The key feature that sets Amazon Go stores apart from traditional stores is that customers walk out of the stores with goods they want to buy without checking out with a cashier or scanning goods at registers themselves. Amazon calls this "Just Walk Out" technology.

25.     In 2019, Amazon opened its first of several Amazon Go stores in the City of New York. Today, Amazon operates nine Amazon Go stores in New York City, including a store at 80 Pine Street in Lower Manhattan.

26.     As Amazon explains on its own website, "Just Walk Out technology uses a combination of sophisticated tools and technologies to determine who took what from the store. When a consumer takes something off the shelf, it's added to their virtual cart. When the consumer puts the item back on the shelf, it comes out of their virtual cart. After they leave the store, they're charged for the items they left the store with." Amazon, Just Walk Out technology by Amazon FAQs, https://perma.cc/X5EB-FFY6.

27.     The Just Walk Out technology used in Amazon Go stores relies on computer vision, deep learning algorithms, and sensor fusion. Through these technologies, Amazon identifies and tracks the movements of each person who is shopping from the time they enter the store until they leave. And these technologies allow Amazon to distinguish each person from all the other people in the store. Amazon calls this process "Person Detection." When conducting Person Detection during the entire time a customer is in the store, Amazon collects, uses,

retainers, converts, and stores information on the size and shape of each customer's body (as well as the bodies of Amazon's workers).

28.     Person Detection starts the moment that a customer enters the store, which is when Amazon connects each person's body to the person's Amazon account.

29.     A customer only has three options for entering an Amazon Go store. *See* Amazon, Shopping at an Amazon Go Store, https://perma.cc/MH2P-2PCA.

30.     First, the customer can scan a code in their Amazon app, which allows Amazon to know which person is entering the store and to charge that person through the same method of payment saved in their Amazon app.

31.     For example, in the picture below, a customer at a Midtown Manhattan Amazon Go store scans a code in his Amazon app, which causes the gates to open and allow him to enter.



32.     Second, the customer can scan a credit card that is linked to their Amazon account, which likewise allows Amazon to know which person is entering the store and charge that person through their normal method of payment.

33.     Third, the customer can use Amazon One, a technology that links an image of the customer's palm to their Amazon account, and then allows the customer to enter the store simply by hovering their palm over a scanner. Amazon's proprietary imaging and computer vision algorithms capture and encrypt the customer's palm image, and after that the person's palm serves as a unique palm signature that can be read by Amazon's scanners. Thus, when a person enters the store with their Amazon One palm signature, Amazon knows who that person is and will charge that person's Amazon account for any goods that person takes from the store. Amazon's website explains how Amazon One works. *See* Amazon, How it works: Meet Amazon One, https://perma.cc/AL8T-JFYD.



34.     No matter which of the three options the customer chooses, when any customer enters the Amazon Go store Amazon immediately identifies that person based on the size and shape of that person's body, and then continues to track that person and analyze the person's movements based on their size and shape until the person leaves the store. To do this, Amazon uses computer vision, deep learning algorithms, and hundreds of cameras and sensors throughout each store.

35.     When customers are shopping in an Amazon Go store, the top-level view of Amazon's system looks like the following image, where each customer is represented by a unique image and a distinct label. This top-level view allows Amazon to track where every customer moves within the store.



36.     Amazon also applies computer vision to conduct a horizontal-level view of each customer, which enables Amazon to determine which people are taking what items off shelves or putting items back on shelves. In this horizontal-level view—shown in the two images below—Amazon scans the shape and size of each person's body and creates a skeleton-like figure for each person that is unique to their size and shape. The movements of these unique figures are closely tracked by Amazon, so that Amazon can associate each person with the products they touch, and thus determine which person is removing an item from the shelf or returning it.

 

37.     In addition to identifying people and their movements, through indexing and deep networks Amazon's technologies can recognize thousands of products in the real world—which is how Amazon knows that a particular person has removed (or returned) a specific product from a shelf. Amazon calls this "Object Recognition." For example, Amazon can identify the same yellow package of Bombay Potatoes (shown to the left) or the same green package of Pirate's Booty, whether the package is standing straight up, crinkled in a ball, or shown in different lighting.



38.     Amazon operates the Just Walk Out technology both inside and outside of the Amazon Go stores.

39.     While Amazon initially collects identifying information about customers in the Amazon Go stores, including customers' palm images and the size and shape of each customer's body, that information is transmitted outside of the stores to Amazon's cloud services, where Amazon converts, analyzes, and applies the information on a real-time basis to make decisions about which customers have moved where and what they have removed from and returned to shelves.

40.     Upon information and belief, Amazon also retains and stores the biometric information of each Amazon Go customer. Amazon then converts, uses, and in some cases, shares or sells this information for Amazon's own use and profit.

41.     Amazon's Just Walk Out technology benefits the company financially because it does not have to employ workers to scan groceries, place items in bags, or spend large amounts of time accepting payments.

**C. Despite constantly collecting, converting, retaining, and storing customers' biometric identifier information and having an obligation to post signs disclosing this, until March 14, 2023 Amazon failed to post any sign at its Amazon Go stores disclosing those practices.**

42.     The information about Amazon Go customers that Amazon collects, retains, converts, and stores to identify those customers, namely information about the size and shape of each customer's body and the palm images of some customers, constitutes "biometric identifier information" within the meaning of the Biometric Identifier Information Law. Information on the size and shape of each customer's body is an "identifying characteristic" that qualifies as "biometric identifier information" within the meaning of N.Y.C. Admin. Code § 22-1201. And a "scan of the hand" is also considered "biometric identifier information" under N.Y.C. Admin. Code § 22-1201.

43.     Because Amazon collects, retains, converts, and stores such biometric identifier information about its Amazon Go store customers, Amazon has an obligation under the N.Y.C. Admin. Code § 22-1202(a) to "plac[e] a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable."

44.     Despite the fact that all of the Amazon Go stores in New York City have collected, retained, converted, and stored biometric identifier information of each customer since 2019, upon information and belief prior to March 14, 2023 Amazon did not display any signs at the entrances of its Amazon Go stores to notify customers that the stores collect, retain, convert, or store customers' biometric identifier information, including but not limited to the standard 8.5 x 11-inch sign authorized by New York City's Department of Consumer and Worker Protection.

**D. Mr. Rodriguez Perez visits an Amazon Go Store that lacks signage about collecting consumers' biometric identifier information and later notifies Amazon that it is failing to post signs about its collection of consumers' biometric identifier information.**

45.     On January 30, 2023, Mr. Rodriguez Perez visited the Amazon Go Store at 80 Pine Street, New York, NY, 10005. The 80 Pine Street Amazon Go store has an alternate mailing address of 110 Maiden Lane, New York, NY 10005.

46.     The Amazon Go store at 80 Pine Street in Manhattan has the same Just Walk Out technology as the other Amazon Go stores in New York City, including same types of computer vision, deep learning algorithms, and sensor fusion that Amazon applies at its other Amazon Go stores and in the cloud.

47.     When Mr. Rodriguez Perez entered the 80 Pine Street Amazon Go store, he did not see any sign at any entrance that notified customers that customers' biometric identifier information is being collected, retained, converted, or stored. In particular, he did not see the 8.5 x 11-inch sign that the Department of Consumer and Worker Protection has made available to commercial establishments like Amazon to comply with § 22-1202(a). *See* https://perma.cc/QX57-G48H.

48.     To enter the store, Mr. Rodriguez Perez scanned a code in his Amazon app. He opted to enter the store this way, instead of scanning his palm with the Amazon One technology, because he did not want to provide Amazon such personal information about himself and his body.

49.     Upon entering the store, Amazon's computer vision identified Mr. Rodriguez Perez through the shape and size of his body and then tracked every single movement that Mr. Rodriguez Perez made in the store to identify where he went, what items he removed from the shelves, and what items he put back on the shelves.

50.     During his visit, Mr. Rodriguez Perez picked out three items—a box of Whole Foods' generic Oreo cookies, Annie's Cheddar Bunnies Baked Snack Crackers, and mango Kombucha—and walked out of the store. After he left the store, Mr. Rodriguez Perez received a receipt for $13.17 from Amazon for purchasing those three items.

51.     If Mr. Rodriguez Perez had seen the standard 8.5 x 11-inch DCWP-authorized sign at the entrance of the 80 Pine Street Amazon Go store informing him that the store "collects, retains, converts, stores, or shares customers' biometric identifier information" (or a similar custom sign that complies with the Biometric Identifier Information Law), he would not have entered the store and he would not have made a purchase at the 80 Pine Street Amazon Go store. Other than when he visited the 80 Pine Street Amazon Go store on January 30, 2023, Mr. Rodriguez Perez has never entered an Amazon Go store.

52.     Mr. Rodriguez Perez values his privacy and is concerned that companies track collect, retain, convert, store, and share too much information that is linked to him and other people. To limit how much information is tracked to him personally, Mr. Rodriguez Perez maintains an email address that does not contain his name. Mr. Rodriguez Perez generally tries to prevent companies from tracking his personal information online, including by not accepting cookies when possible. Mr. Rodriguez Perez believes that consumers should be fully informed about what data and information about them companies collect, retain, convert, store, share, and sell *before* those companies collect that data and information, so that consumers can understand and knowingly consent to the collection of that data and information.

53.     On February 7, 2023, Mr. Rodriguez Perez mailed a letter to the Amazon Go Store at 80 Pine Street, notifying Amazon that he had visited the Amazon Go store at 80 Pine Street, that the store was collecting biometric identifier information on consumers, including by

"using computer vision and video of bodily characteristics to identify customers," that Amazon

has an obligation to post a sign notifying customers about collecting such information, and that

Amazon was not complying with that disclosure obligation.

**E. After being notified of its violation, Amazon fails to take corrective measures or provide Mr. Rodriguez Perez with an express written statement that the violation had been cured and that no further violations will occur.**

54.     Amazon did not respond to Mr. Rodriguez Perez's February 7, 2023 letter, despite

the fact that Mr. Rodriguez Perez provided Amazon his home address. Nor did Amazon provide

Mr. Rodriguez Perez with an express written statement that the violation of N.Y.C. Admin. Code

§ 22-1202(a) has been cured and that no further violations shall occur.

55.     From the time that Mr. Rodriguez Perez wrote to Amazon on February 7 through

March 13, 2023, Amazon did not post any signs at the 80 Pine Street store to disclose Amazon's

collection of biometric identifier information, and upon information and belief Amazon did not

post any signs at the other Amazon Go stores in New York City disclosing its collection of

biometric identifier information.

56.     On March 14, 2023, Amazon posted the following sign at the 80 Pine Street

Amazon Go store and at least some of the other Amazon Go stores in New York City.



57.     The sign states as follows: "Biometric information collected at this location. Amazon Go. This business uses an Amazon One device that collects and stores customers' biometric identifier information. If you use Amazon One, your biometric information will be used to help identify you. No biometric information will be collected from customers who do not use an Amazon One palm scanner."

58.     On or after March 14, 2023, at the 30 Rockefeller Plaza Go store Amazon posted a small black sign with the same writing as the sign above. The sign is shown towards the left of the following image.



59.     The sign that Amazon posted at its Go stores on or after March 14, 2023 falls woefully short of complying with the Biometric Identifier Information Law's disclosure mandate, and accordingly Amazon has not yet taken corrective action in response to Mr. Rodriguez Perez's February 7, 2023 notice. *See* N.Y.C. Admin. Code § 22-1202(a).

60.     Amazon's sign does not comply with N.Y.C. Admin. Code § 22-1202(a) for three reasons.

61.     First, the sign is not "clear and conspicuous," as § 22-1202(a) and its implementing rule require. The style of the sign is designed to avoid attracting attention—the very opposite of clear and conspicuous. The color, style, and font size of the sign do not attract the attention of customers who enter the store. Amazon's custom sign stands in stark contrast to the standard sign authorized by New York City's Department of Consumer and Worker Protection that has a bright red banner that draws attention by stating "Attention Customers." In addition, at least in the case of the 30 Rockefeller Plaza location, the small sign has not been placed at each consumer entrance and been placed in a location to the far left that makes it all but impossible that customers entering on the opposite side (*i.e.*, five doors down) will ever see, much less read, the sign.

62.     Second, the sign does not identify all of the actions that Amazon takes with respect to customers' biometric identifier information that § 22-1202(a) requires to be disclosed on a sign. Section 22-1202(a) and its implementing rule require commercial establishments to post a sign notifying customers that "customers' biometric identifier information is being collected, retained, converted, stored, or shared, *as applicable*." N.Y.C. Admin. Code § 22-1202(a) (emphasis added); *see also* N.Y.C. Rules, Tit. 6, Ch. 8, § 8-01 (stating that the sign must disclose "if customers' biometric identifier information is being collected, retained, converted, stored, or shared."). The model sign provided by the Department of Consumer and Worker Protection references not just the collection of biometric identifier information, but covers the waterfront of all the relevant types of actions the law requires to be disclosed. It states, "This Business collects, retains, converts, stores, or shares' customers' biometric identifier

information." By including the words "as applicable" in the phrase "customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable," § 22-1202(a) makes clear that the sign must disclose *all* of the relevant types of actions that the commercial establishment takes with respect to biometric identifier information.

63.     But Amazon's sign only mentions generally that biometric information is "collected" at this location and when referencing the Amazon One palm scanner it says that the device "*collects and stores* customers' biometric identifier information." (emphasis added). The sign, however, does not state that Amazon *converts or retains* customers' biometric identifier information, even though Amazon *does* convert and retain such information, as described above.

64.     Third, and most troubling, other than the sign's references to how the Amazon One palm scanner collects and stores biometric identifier information from customers who use Amazon One, the sign expressly denies and disavows that Amazon Go stores collect customers' biometric identifier information. It unequivocally states: "No biometric information will be collected from customers who do not use an Amazon One palm scanner." In other words, the sign is telling customers that if they do not use the Amazon One palm scanner, their biometric identifier information will never be collected. But as described above, the Amazon Go stores *always* collect, convert, store, and retain biometric identifier information from *every customer* who enters the stores—including those who don't use the Amazon One palm scanner—by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's body to identify customers, track where they move in the stores, and determine what they have purchased.

65.     An ordinary, reasonable person who reads Amazon's sign would thus believe that their biometric identifier information will not be collected by the Amazon Go store so long as they don't use the Amazon One palm scanner to enter, even though Amazon *always* collects, retains, converts, and stores biometric identifier information for each-and-every customer.

66.     Customers who read the sign but do not use the Amazon One palm scanner are placed in a worse position for having read the sign than if they had not seen the sign in the first place—because they have been led to falsely believe that Amazon will not collect any of their biometric identifier information. And even customers who choose to use the Amazon One palm scanner would reasonably believe that the Amazon One palm scanner is the only way in which their biometric identifier information is being collected, although that is not true.

## CLASS ACTION ALLEGATIONS

67.     The named Plaintiff brings this action as a proposed class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class: "all persons who on or after January 15, 2022 through the date of judgment in this action made a purchase from an Amazon Go store in the City of New York that did not post a sign at each customer entrance that complies with N.Y.C. Admin. Code § 22-1202(a)."

**Rule 23(a) is satisfied.**

68.     The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least tens of thousands of people who are members of the proposed Class, because during the relevant time period they made purchases at Amazon Go stores in the City of New York that did not comply with N.Y.C. Admin. Code § 22-1202(a).

69.   There are at least several questions of law and fact common to all Class Members, including:

a.   Whether the Amazon Go stores in the City of New York have collected, retained, converted, and/or stored biometric identifier information about consumers?

b.   Whether the Amazon Go stores in the City of New York have posted clear and conspicuous signs near each of their customer entrances that comply with N.Y.C. Admin. Code § 22-1202(a)?

c.   Whether Amazon has violated N.Y.C. Admin. Code § 22-1202(a)?

d.   Whether Amazon was unjustly enriched by its failure to notify customers that its Amazon Go stores collected, retained, converted, and/or stored consumers' biometric identifier information?

e.   Whether declaratory and injunctive relief is warranted?

f.   Whether Amazon owes damages of at least $500 to each member of the Class for each violation of N.Y.C. Admin. Code § 22-1202(a)?

g.   Whether attorneys' fees and costs should be awarded?

70.   The Plaintiff's claims are typical of the claims of the Class he seeks to represent, because during the relevant period Plaintiff and the Class Members entered Amazon Go stores in the City of New York, they purchased goods from the Amazon Go stores, and Amazon failed to post clear and conspicuous signs near each of the stores' entrances notifying customers in plain, simple, language that customers' biometric identifier information was being collected, retained, converted, or stored. Accordingly, the Plaintiff's claims arise from the same pattern or practice or course of conduct that forms the basis of the Class Members' claims. In addition, the Plaintiff

brings the same claims for violation of the Biometric Identifier Information Law and for unjust enrichment based on the same legal theory as the other Class Members.

71.     Both the Plaintiff and his counsel will fairly and adequately represent the Class. There is no antagonism between the interests of the Plaintiff and those of the Class Members. There is no conflict between the Plaintiff's claims and the claims of the Class Members. The Plaintiff has retained counsel skilled in complex class actions who will vigorously prosecute this litigation.

**Rule 23(b)(3) certification is appropriate.**

72.     Class certification is appropriate for the proposed Class under Rule 23(b)(3). The common questions of fact and law, described above, predominate over any questions affecting only individual Class Members, including whether Amazon violated and continues to violate the Biometric Identifier Information Law and the relief the Plaintiff and the Class Members seek.

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. First, the Class Members do not have an interest in individually controlling the prosecution of separate actions, because their individual damages are unlikely to be large enough to warrant pursuing individual litigation in court or to obtain counsel to pursue an individual action, and because the cost of litigating the action will far exceed any potential benefit for individual Class Members.

74.     The prosecution of separate actions by individual Class Members would also impose heavy burdens on the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the proposed Class, including the key legal question of whether Amazon has violated the Biometric Identifier Information Law. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and

would assure the uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

75.     Second, the Plaintiff and his counsel are unaware of any other litigation by the Class Members against Amazon regarding the practices challenged in this action.

76.     Third, it is desirable to concentrate the litigation of the claims in this forum, because all of the Amazon Go stores in New York City are located in this District and venue is proper in this District.

77.     There will be no difficulty managing this action as a class action.

**FIRST CLAIM FOR RELIEF**
**Violation of the City of New York's Biometric Identifier Information Law**
**N.Y.C. Admin. Code § 22-1202(a)**
**On Behalf of Plaintiff and the Proposed Class**

78.     The Plaintiff, on behalf of himself and the Class Members, incorporates by reference all preceding paragraphs.

79.     Amazon has engaged in a pattern or practice of violating N.Y.C. Admin. Code § 22-1202(a).

80.     N.Y.C. Admin. Code § 22-1202(a) provides that "[a]ny commercial establishment that collects, retains, converts, stores or shares biometric identifier information of customers must disclose such collection, retention, conversion, storage or sharing, as applicable, by placing a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable."

81.     N.Y.C. Admin Code § 22-1201 provides that "[t]he term 'biometric identifier information' means a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint, (iii) a scan of hand or face geometry, or any other identifying characteristic."

82.     The Amazon Go stores in the City of New York are "commercial establishment[s]" within the meaning of § 22-1201, because each store is a "retail store" and a "food and drink establishment." Each Amazon Go store is a "retail store" because it is an establishment that sells consumer commodities. And each store is a "food and drink establishment" because it sells food or beverages to the public for consumption off of the premises. *See* N.Y.C. Admin. Code § 22-1201.

83.     As described above, each Amazon Go store, by operating its Just Walk Out technology, collects, retains, converts, and stores biometric identifier information about each customer who enters the store, including but not limited to information about the size and shape of each customer's body and palm images of consumers who use the Amazon One technology to sign into the store.

84.     Information about the size and shape of each customer's body is biometric identifier information within the meaning of N.Y.C. Admin. Code § 22-1201, because that information constitutes a physiological or biological characteristic used by Amazon, singly or in combination, to identify the customer, and that information is an "identifying characteristic" of each customer. As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on Local Law 3, "physiological characteristics concern the shape or composition of the body".

85.    The palm images that Amazon Go stores scan are also biometric identifier information within the meaning of N.Y.C. Admin. Code § 22-1201. A "scan of [the] hand" is one of the enumerated examples of "biometric identifier information" in N.Y.C. Admin. Code § 22-1201.

86.    Upon information and belief, from January 15, 2022, when the Biometric Identifier Information Law became effective, through March 13, 2023, none of the Amazon Go stores in New York City placed any sign near the entrances of the stores to notify customers that customers' biometric information is being collected, retained, converted, or stored.

87.    By failing to post any sign notifying consumers that their biometric information is being collected, retained, converted or stored by all of its Amazon Go stores in New York City from January 15, 2022 through March 13, 2023, Amazon violated N.Y.C. Admin. Code § 22-1202(a).

88.    Although on March 14, 2023 Amazon placed a sign at the 80 Pine Street store—and other Amazon Go stores in New York City—stating that the store collects biometric identifier information, that sign does not comply with N.Y.C. Admin. Code § 22-1202(a).

89.    As described above, the sign is not "clear and conspicuous," because it's designed to avoid attracting the attention of customers entering the store. The sign also does not disclose that the Amazon Go stores convert or retain biometric identifier information, as required by § N.Y.C. Admin. Code § 22-1202(a), when the commercial establishment *does* convert or retain such information. And the sign expressly denies and disavows that Amazon Go stores are collecting customers' biometric identifier information except for customers who use the Amazon One palm scanner, even though the Amazon Go stores *do* collect, retain, convert, and store biometric identifier information from *all* customers, including the ones who do not use the

Amazon One palm scanner. Rather than informing all Amazon Go customers that their biometric identifier information *will* be collected—as well as retained, converted, and stored—as required by § N.Y.C. Admin. Code § 22-1202(a), Amazon's sign communicates to customers that their biometric identifier information *will not* be collected.

90.     Plaintiff Rodriguez Perez and the other Class Members have been aggrieved by Amazon's violation of § 22-1202(a), because Amazon failed to provide them with the proper notification that is required by § 22-1202(a) when they approached and then entered the Amazon Go stores in New York City.

91.     Plaintiff Rodriguez Perez and other members of the Class have been injured by Amazon's failure to provide them with the notification required by N.Y.C. Admin. Code § 22-1202(a), including but not limited to making purchases at Amazon Go stores that they otherwise would not have made had Amazon provided them the required notification and having their biometric identifier information collected, retained, converted, and stored by Amazon without their knowledge and/or consent.

92.     Under N.Y.C. Admin. Code § 22-1203, Amazon is liable to the Plaintiff and each member of the Class for damages of at least $500 for each violation of § 22-1202(a). A violation has occurred each time that the Plaintiff or a member of the Class entered an Amazon Go store in New York City on or after January 15, 2022 at a time when Amazon did not place a sign near all of the entrances of the Amazon Go stores that complies with § N.Y.C. Admin. Code § 22-1202(a).

93.     Amazon's actions were intentional, deliberate, reckless, and indifferent to the rights of Plaintiff and the Class Members.

94.     The Plaintiff seeks his attorneys' fees and costs related to this lawsuit and Amazon's violations of N.Y.C. Admin. Code § 22-1202(a).

95.     Because Amazon failed to provide Mr. Rodriguez Perez with an express written statement that the violation of § 22-1202(a) has been cured and that no further violations shall occur within 30 days of Mr. Rodriguez Perez providing written notice to Amazon of its violation of N.Y.C. Admin. Code § 22-1202(a), Mr. Rodriguez Perez has a right to initiate an action against Amazon. *See* N.Y.C. Admin. Code § 22-1203.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**
**On Behalf of Plaintiff and the Proposed Class**

96.     The Plaintiff, on behalf of himself and the Class Members, incorporates by reference all preceding paragraphs.

97.     A plaintiff has a claim for unjust enrichment when the defendant was enriched at the plaintiff's expense, and it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.

98.     Because Amazon failed to provide notice to customers that Amazon collects, retains, converts, and stores their biometric identifier information, including information on the size and shape of each customer's body, Plaintiff and other members of the Class entered the store and made purchases that they otherwise would not have made if Amazon had properly provided that notice, or would not have agreed to pay the same price for the goods they purchased if Amazon had properly provided that notice. Those purchases enriched Amazon at the expense of the Plaintiff and the Class Members.

99.     It is against equity and good conscience to permit Amazon to retain the money that it received from the Plaintiff and the Class Members under these circumstances.

100.   Amazon is liable to the Plaintiff and the Class Members for the profit that
Amazon earned from the sales in the Amazon Go stores during the period of time that Amazon
did not notify customers that the stores collect, retain, convert, and store their biometric identifier
information.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff and the Class Members pray for relief as follows:

(i)     A declaratory judgment that Amazon has violated the Biometric Identifier
        Information Law, N.Y.C. Admin. Code § 22-1202(a);

(ii)    A preliminary and permanent injunction against Amazon requiring it to comply
        with N.Y.C. Admin. Code § 22-1202(a) at all Amazon Go stores in the City of
        New York;

(iii)   Certification of the case as a class action under Fed. R. Civ. P. 23(a) and (b)(3);

(iv)    Designation of the Plaintiff as the representative of the Class;

(v)     Designation of Plaintiff's counsel as Class Counsel;

(vi)    An order forbidding Amazon from engaging in further violations of N.Y.C.
        Admin. Code § 22-1202(a);

(vii)   An award of actual, real, and/or statutory damages for Amazon's violations;

(viii)  Reasonable attorneys' fees and costs incurred herein to the extent allowable by
        law;

(ix)    Pre- and post-judgment interest, as provided by law;

(x)     Payment of a reasonable service award to the Plaintiff in recognition of the
        services he has rendered and will continue to render to the Class Members; and

(xi)    Such other and further legal and equitable relief, including nominal damages, as
        this Court deems necessary, just, and proper.

## JURY DEMAND

101.   The Plaintiff demands a jury trial.

Dated: March 16, 2023                    Respectfully submitted,

                                         PETER ROMER-FRIEDMAN LAW PLLC

                                         By: */s/ Peter Romer-Friedman*
                                         Peter Romer-Friedman

                                         Peter Romer-Friedman
                                         1629 K Street NW
                                         Suite 300
                                         Washington, DC 20006
                                         Tel.: (202) 355-6364
                                         Email: peter@prf-law.com

                                         POLLOCK COHEN LLP

                                         Christopher K. Leung
                                         111 Broadway, Suite 1804
                                         New York, NY 10006
                                         Tel.: (917) 985-3995
                                         Email: chris@pollockcohen.com


                                         SURVEILLANCE TECHNOLOGY
                                         OVERSIGHT PROJECT

                                         Albert Fox Cahn
                                         David Siffert
                                         40 Rector Street
                                         9th Floor
                                         New York, NY 10006
                                         Tel.: (212) 518-7573
                                         Email: albert@stopspying.org
                                                 david@stopspying.org